ALEXANDER SIMPSON v. STILLWATER WATER COMPANY.[1]

Nov. 18, 1895.

Nos. 9462—(69).

**Nuisance—Liability of Owner.**

Where an owner of land, in possession thereof, consents to and authorizes the erection thereon by a third party of a structure which creates or constitutes a nuisance, he is as liable for the consequences as if he had erected the structure himself.

**Erroneous Charge.**

But *held* that a part of the charge of the court below was erroneous, because inapplicable to the facts, or because an erroneous application could be made of it.

Appeal by defendant from an order of the district court for Washington county; Williston, J., denying a motion for a new trial. Reversed.

*Clapp & Macartney*, for appellant.

*S. L. Pierce*, for respondent.

[1] Reported in 64 N. W. 1144.

COLLINS, J.[2] Defendant is the owner of a block of land in the city of Stillwater, abutting Fourth street on the east; while plaintiff is the owner of a smaller tract, a few rods distant, in a southerly direction. Through defendant's land, when in its natural condition, there was a deep ravine, in which ran a small stream of water, and, at certain seasons of the year, large quantities of surface waters gathered therein, making their way easterly to Lake St. Croix, less than a mile away. South of the ravine, and about on the south line of defendant's land, was a natural barrier,—a ridge of earth,—which effectually prevented the spreading of these waters to the south; and on the southerly slope of this ridge, considerably lower than defendant's, were the premises owned by plaintiff.

Many years ago, defendant company and other interested persons removed a part of the ridge, depositing the earth in the ravine, where it crossed their property and also, by consent of the city authorities, where it was crossed by Fourth street; the purpose being to improve their lots. But the cutting down of the ridge, and the partial filling of the ravine, did not cause the waters to overflow or to make their way in any new direction. About 1885 the city built a stone culvert along the bed of the ravine as it had been raised, extending it westerly across Fourth street to defendant's land. The city, by consent of defendant, built on the land of the latter an upright catch basin or well hole, which inclosed the west end of the culvert, and extended some inches above it. On the top of the basin was a wooden screen, designed to stop boards, brush, and other solid articles, and to prevent their passing into the basin, through which all water had to pass to reach the culvert. Material was placed on either side of the culvert to retard the water as it came down, thus forming a small pond at this point. When the water was high enough, it entered the basin, but ordinarily it remained until absorbed by evaporation or by the soil. About 1889 the city filled in and graded Fourth street, bringing it several feet above the roof of the culvert, thus permanently obstructing the passage of water down the ravine, except as it went into the basin and through the culvert. The result of the temporary obstructions we have mentioned, upon either side of the culvert at its west end, was to stop and accumulate west thereof, upon defendant's land,

[2] Buck, J., took no part.

all of the debris, and much of the earth which came with the water, and to fill in along the ravine, and this filling-up process rapidly increased after Fourth street was graded. As the ravine bed became elevated in this manner, the city extended the catch basin upward, so that in 1894 its top was several feet above the roof of the culvert. In 1891, defendant and other persons erected a stone wall, about 10 feet high, and more than 100 feet in length, on the south line of defendant's land, and about where the ridge had been.

In May, 1894, there came an unusually heavy fall of rain, which swept down the ravine, carrying with it large quantities of planks, timber, brush, and other articles upon the top of the catch basin, covering and choking it up, and completely preventing the escape of the water into the culvert. The water thus hemmed in rose rapidly to the top of the wall, overflowed it, and tore out one end. Through the aperture, destructive torrents of water were precipitated upon plaintiff's premises, to their serious damage, and this action was brought to recover for such damages.

In addition to a general verdict for plaintiff, the jury found, answering special questions, that the wall was negligently constructed, in that it was not sufficiently strong to resist such a body of water as might reasonably be expected to accumulate and press against it; that the storm in question was one not reasonably to be expected; and, further, that the catch basin was not built upward by defendant after it was first constructed, and as the ravine filled with sediment and debris, as was contended by plaintiff upon the trial.

The charge of the court to the jury was full and explicit. It was stated that the injury resulting to the plaintiff, as claimed by him, was from three causes: Diverting the course of the water, raising the walls of the catch basin, and constructing the wall on the south side of the ravine. But two exceptions were taken to the charge by counsel for defendant (appellant), and only one of these is before us for review. When referring to the building of the catch basin by the city on defendant's land, with its permission, stating that defendant was under no obligation to care for the basin unless it had assumed the duty, and also that it had no right to cut it down or to close it up, the court charged—inadvertently, we apprehend—that defendant was bound to keep that natural water course in such a condition that it would deliver at the mouth of the catch basin all waters which

might reasonably be expected to flow down the same, taking into consideration previous experiences with rainstorms; and, further, that it was defendant's duty to keep the ravine in condition to carry these waters to the mouth of the basin. If defendant did this, said the court, its duty was performed so far as this branch of the case was concerned. To this defendant's counsel excepted.

We are of the opinion that the exception was well taken. The charge upon this point was, in effect, that if defendant failed to remove the accumulations in the ravine, so that the water could freely reach the mouth of the basin, it neglected a duty imposed upon it by law, and became responsible for the disastrous consequences. The language used fastened upon defendant a liability for such injuries as might result from its failure to remove the accumulation after the city had built the culvert and graded Fourth street, including the debris cast down upon the basin during the storm in question.

We have stated that the defendant authorized the construction and maintenance of the catch basin on its premises by the city in the precise manner in which it was constructed and maintained. If it actually constituted a nuisance, we think the defendant was just as responsible for the consequences as if it had constructed and maintained the basin itself. White v. Jameson, L. R. 18 Eq. 303. So that, if it had been shown that this structure constituted a nuisance by obstructing the flow of water, causing it to overflow upon plaintiff's land, that part of the charge referred to would have been correct, although inconsistent with a previous part of the charge; for, if defendant had wrongfully erected a structure the effect of which would be to obstruct the flow in its natural channel,—the ravine,—it devolved upon it to prevent or remove such obstructions, because they were the proximate result of its own unlawful act. But there was no evidence that the basin created or constituted a nuisance, inasmuch as it was not made to appear that it was incapable of carrying off all of the water which could pass through the culvert, or that it was any more likely to become filled up or clogged with debris than would have been the culvert if the water had been allowed to flow horizontally. This being the situation, there was no proof of the existence of any facts from which the duty of defendant to keep the ravine clear would have arisen. Upon this state of the evidence, the charge excepted to was prejudicial error; for, under this charge, it

cannot be determined whether the verdict was based on the defective character of the wall alone, or also upon the failure of defendant to keep the ravine clear.   A new trial must be had.

Order reversed.